UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ROBERT BUGLIARO,

                            Plaintiff,

        -against-

THE CITY OF NEW YORK, THE POLICE
DEPARTMENT OF THE CITY OF NEW
YORK, Detective JAMES SCHWEIKER,
Sergeant PATRICK MCGUIRE, and Detective
EDWARD HENNESSY,

                       Defendants.
-----------------------------------------------------------------x

**MEMORANDUM AND ORDER**
10-CV-4881 (FB) (RER)

*Appearances:*
*For the Plaintiff:*
DANIEL SHIMKO, ESQ.
The Berkman Law Office, LLC
111 Livingston Street, Suite 1928
New York, NY 11201

*For Defendants:*
MICHAEL A. CARDOZO, ESQ.
Corporation Counsel, City of New York
WESLEY EUGENE BAUMAN, ESQ.
Assistant Corporation Counsel
100 Church Street
New York, NY 10007

**BLOCK, Senior District Judge:**

        Plaintiff Robert Bugliaro ("Bugliaro") brings this action pursuant to 29 U.S.C.

§ 1983 alleging that Detective James Schweiker, Sergeant Patrick McGuire, and Detective

Edward Hennessy maliciously prosecuted him.[1] Defendants' motion for summary judgment

is granted as to McGuire but denied as to Hennessy and Schweiker.

---

        [1]Bugliaro has withdrawn all claims against the City of New York and the New
York City Police Department, and has withdrawn all claims other than the malicious
prosecution claim against Schweiker, McGuire, and Hennessy.

**I.**

The following facts, taken from the parties' Rule 56.1 statements, are undisputed unless otherwise noted. Where disputed, they are presented in the light most favorable to the Bugliaro. *See Fed. Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011).

On September 27, 2005, McGuire and Schweiker observed two assailants in the midst of robbing a jewelry store. Two days later, Bugliaro was arrested for the crime and placed in a lineup. The first witness, a civilian, did not identify anyone. Schweiker was the second witness, and Bugliaro was in position one. Schweiker stated: "I think it's number one. I can't be 100 percent sure." Pl.'s 56.1 ¶ 16; Defs.' 56.1 ¶ 16. According to Bugliaro, Schweiker then left. According to defendants, however, Schweiker amended his response while leaving, telling Hennessy, the lead detective, "I believe number one was it. . . . I'm positive." Pre-Trial Tr. (Schweiker), Ex. D, at 56:12-21. Robert Weinstein, Bugliaro's defense attorney, was present but did not hear a revised opinion. He recorded Schweiker's opinion as "I can't be 100 percent." Weinstein's Lineup Notes, Ex. 9. Schweiker admitted that he could not see Bugliaro's profile as he was leaving. McGuire was the final witness. Before he entered, Weinstein moved Bugliaro into position two, concerned that someone would signal his seat to McGuire. In fact, McGuire did identify the filler in position one.

Hennessy prepared a lineup report, which Schweiker signed, describing the identification only as: "Not sure. I think it's 1." Lineup Report, Ex. 5. Later that night, Assistant District Attorney ("ADA") Michael Fistel spoke with Hennessy and was told "[t]hat initially Detective Schweiker was not able to identify anyone and that he then turned and

started to leave and then amended his answer and said yes, he did recognize someone and he gave a number and that number corresponded to [Bugliaro]." Fistel Dep., Ex. 8, at 16:4-13. Fistel prepared the complaint and Hennessy signed it, containing the sworn statement that "Deponent [Hennessy] states he is informed by Det. Schweiker that the defendant was the second suspect present in the aforementioned jewelry store." Criminal Compl., Ex. E, at 2. After Schweiker and Hennessy testified before the grand jury, Bugliaro was indicted.

At trial, Detective Arthur Caddigan testified that he viewed a surveillance tape of the robbery. After the police took possession of the tape, the footage of the robbery was ruined, though the footage preceding and following it remained intact. An expert testified that "[t]he tape absolutely was damaged by physical manipulation." Trial Tr. (Fredericks), Ex. 3, at 1546:10-12. Although Hennessy testified that he did not know whether a video captured the crime, did not view a video, and did not know whether anyone viewed it, he admitted seeing the room where the video was and meeting with officers who were working on it.

Bugliaro was acquitted after trial.

## II.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### A.    Claims against Sergeant McGuire

Bugliaro does not respond to defendants' contention that McGuire does not

belong in this suit since he was a victim and did not identify Bugliaro.   Summary judgment

in favor of McGuire is therefore appropriate.  *See Ostroski v. Town of Southold*, 443 F. Supp. 2d

325, 340 (E.D.N.Y. 2006) (deeming claim abandoned due to plaintiff's failure to respond).

**B.      Malicious Prosecution Claims against Detectives Schweiker and Hennessy**

The elements of a malicious prosecution claim under New York law are (1) the

initiation of a criminal proceeding, (2) the favorable termination of that proceeding, (3) lack

of probable cause, and (4) malice as the motivation.  *See Swartz v. Insogna*, 704 F.3d 105, 111-12

(2d Cir. 2013).[2]  Defendants contend that Bugliaro cannot satisfy the first or third elements.

**1.      Initiation of the Prosecution**

**a.      Hennessy**

"Under New York law, police officers can 'initiate' prosecution by filing charges

or other accusatory instruments."  *Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010).

Since Hennessy signed the complaint and swore to its contents, he initiated the prosecution.

*See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) (stating that "a jury could

clearly find that [the officer] started the assault prosecution" where he filed the charges).[3]

**b.      Schweiker**

Though defendants argue that Schweiker simply reported his observations, there

---

[2]To prevail on a § 1983 malicious prosecution claim against a state actor, a
plaintiff must "establish the elements of a malicious prosecution claim under state law."
*Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002).

[3]Citing *Jouthe v. City of New York*, 05-cv-1374, 2009 WL 701110 (E.D.N.Y. Mar. 10,
2009), defendants argue that Hennessy only reported information from victims and thus
did not initiate.  Unlike *Jouthe*, it is disputed whether Hennessy misled the prosecutor.

is a triable issue as to initiation. An officer can initiate "by knowingly providing false information or fabricating evidence that is likely to influence the prosecutors or the grand jury," *Davis v. Mount Vernon Police Dep't*, 11-cv-2991, 2012 WL 1632794, at *4 (S.D.N.Y. May 8, 2012); however, "[o]ne who does no more than disclose to a prosecutor all material information within his knowledge is not deemed to be the initiator," *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 217 (2d Cir. 2000) (internal quotation marks omitted).[4] Schweiker initially could not "be 100 percent sure" about his identification, and Bugliaro disputes that Schweiker amended his opinion moments later. Weinstein's observations and notation, Schweiker's admission about his vantage point, and the lineup report all support Bugliaro's account. The disputed issue of whether Schweiker falsely reported his lineup identification prior to the grand jury proceeding precludes summary judgment.[5]

## 2. Lack of Probable Cause

Probable cause defeats a claim of malicious prosecution, *Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010), and an indictment "creates a presumption of probable cause," *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). To rebut this presumption, Bugliaro

---

[4]Although defendants contend that the prosecutor exercised independent judgment in bringing the prosecution, "in malicious prosecution actions alleging that a police officer provided false information to a prosecutor, what prosecutors do subsequently has no effect whatsoever on the police officer's initial, potentially tortious behavior." *Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010).

[5]If at trial, however, Bugliaro does not establish that Schweiker changed his story prior to the grand jury proceeding, Bugliaro will have failed to establish initiation. *See Del Col v. Rice*, 11-cv-5138, 2012 WL 6589839, at *12 n.16 (E.D.N.Y. Dec. 18, 2012) ("The only allegation against the . . . Defendants that could possibly lead the Court to find that they initiated the prosecution is Plaintiffs' allegation that [they] presented false evidence to the grand jury. However, these Defendants are absolutely immune from all claims based solely on their grand jury testimony." (citation omitted)).

"must establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Rothstein v. Carriere*, 373 F.3d 275, 283 (2d Cir. 2004) (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 83 (1983)).

In *Rehberg v. Paulk*, 132 S. Ct. 1497, 1506 (2012), the Supreme Court held that "a grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony" and that "this rule may not be circumvented . . . by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution." As a result, plaintiffs can no longer base malicious prosecution claims solely on the theory that an officer lied to the grand jury or use an officer's grand jury testimony to rebut the probable cause presumption. *See Carr v. City of New York*, 11-cv-6982, 2013 WL 1732343, at *5 (S.D.N.Y. Apr. 19, 2013) ("[T]his presumption cannot be overcome by alleging that a police officer lied before the grand jury given the absolute immunity accorded grand jury witnesses."). Yet plaintiffs may still bring claims based on allegations of bad faith conduct outside the grand jury. *See Del Col v. Rice*, 11-cv-5138, 2012 WL 6589839, at *14 n.19 (E.D.N.Y. Dec. 18, 2012) ("While *Rehberg v. Paulk* holds that grand jury testimony cannot be the sole basis for a § 1983 claim, courts have allowed malicious prosecution claims to proceed, where malicious prosecution claims are based on more than false grand jury testimony."); *see also Matthews v. City of New York*, 889 F. Supp. 2d 418, 439-41 (E.D.N.Y. 2012) (allowing claim to proceed based on alleged use of a coerced confession); *Carr*, 2013 WL 1732343, at *6 (noting that *Rehberg* does not protect allegedly false statements made in a criminal complaint).

a.    **Hennessy**

"Where there is some indication in the police records that, as to a fact crucial to

the existence of probable cause, the arresting officers may have lied in order to secure an indictment, and a jury could reasonably find that the indictment was secured through bad faith or perjury, the presumption of probable cause created by the indictment may be overcome." *Manganiello v. City of New York*, 612 F.3d 149, 162 (2d Cir. 2010) (internal quotation marks omitted). Viewing the evidence in the light most favorable to Bugliaro, he has presented sufficient evidence (beyond grand jury testimony) that Hennessy engaged in bad faith conduct to obtain the indictment, thereby rebutting the presumption of probable cause. Weinstein's observations and notation, as well as the lineup report, call into question the veracity of Hennessy's statements in the complaint and to ADA Fistel that Schweiker identified Bugliaro. Additionally, because evidence suggests that Hennessy was aware of a video, the video was in police custody, Hennessy was in charge of the file, and the video was destroyed, there is a triable issue as to whether Hennessy destroyed the video.[6]

### b. Schweiker

Although Bugliaro must overcome the presumption of probable cause with "evidence establishing that the police witnesses have not made a complete and full statement of facts either to the Grand Jury or to the District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith," *Colon*, 60 N.Y.2d at 82-83, he cannot rely on the theory that Schweiker lied to the grand jury or during

---

[6]Defendants contend that all of this evidence is irrelevant, and that Bugliaro's allegations represent time-barred right-to-fair-trial claims. This position unduly narrows the scope of conduct that can lead to a prosecution and that is relevant to the issue of probable cause. Fabricated or withheld evidence can influence the decision to prosecute, and thus this conduct can serve as the basis for a malicious prosecution claim. *See Rothstein*, 373 F.3d at 283. Further, defendants' argument that a suggestive lineup cannot form the basis of this claim is misplaced since Bugliaro does not rely on it.

preparations, *see Rehberg* 132 S. Ct. at 1506-07 (granting absolute immunity for grand jury testimony and noting that this "may not be circumvented by claiming that a grand jury witness conspired to present false testimony" through "preparatory activity"). Crediting Bugliaro's account, Schweiker truthfully reported his uncertain lineup opinion in the viewing room and in the lineup report, but falsely testified before the grand jury that he had revised his answer to become certain of his identification. Schweiker's signing of the report, which contained only his uncertain opinion, and his admission that he could not see Bugliaro from the doorway of the viewing room raises a material issue of fact. Though the record is unclear as to when and how Schweiker began to report his allegedly false identification, there is sufficient evidence for a jury to find that Schweiker changed his story prior to his grand jury testimony to secure the indictment and to convince ADA Fistel to prosecute. If established at trial, this would overcome the presumption of probable cause and avoid the *Rehberg* bar.[7]

## III.

In sum, the following triable issues of fact exist: (1) whether Schweiker revised his lineup identification as he left the viewing room; (2) whether Schweiker falsely reported this revised identification prior to the grand jury proceeding; (3) whether Hennessy lied about Schweiker's identification in the complaint and to the prosecutor; and (4) whether Hennessy

---

[7]Defendants move to strike the grand jury minutes, which Bugliaro received during his criminal proceedings but did not formally petition to have unsealed. They cite no legal support and do not contend that Bugliaro unlawfully acquired the minutes. Their objection is irrelevant because, in light of *Rehberg*, the Court cannot rely on such testimony. The Court declines to strike the minutes. *Cf. Frederick v. New York City*, 11-cv-469, 2012 WL 4947806, at *9 (S.D.N.Y. Oct. 11, 2012) (noting that one way to prove what happened in a malicious prosecution case is "where plaintiffs have already come into possession of grand jury minutes in the underlying criminal proceeding").

was aware of the video and responsible for its destruction.  Accordingly, defendants' motion for summary judgment is denied as to Schweiker and Hennessy.  The motion is granted as to McGuire.

**SO ORDERED.**

/s/ Frederic Block

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
May 31, 2013